Cheshire
No. 89-586

THE STATE OF NEW HAMPSHIRE

v.

ARTHUR KIEWERT

March 20, 1992

*John P. Arnold,* attorney general (*Ann M. Rice,* attorney, on the brief, and *Michael D. Ramsdell,* assistant attorney general, orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant was convicted on two counts of burglary, RSA 635:1, II, for which he was sentenced to an extended term of imprisonment, RSA 651:6, I(c), and a shorter concurrent term. On appeal, he raises the following issues: (1) whether the Superior Court (*Hollman,* J.) erred in admitting a statement by an unavailable declarant to the declarant's wife under the statement against penal interest exception to the hearsay rule; (2) whether the phrase "in excess of one year" contained in RSA 651:6, I(c) is meant to modify the word "sentences" or relates instead to the period of imprisonment; and (3) whether a letter from the department of corrections is sufficient to prove that the defendant has twice previously been imprisoned on sentences in excess of one year, and is therefore eligible for application of an extended sentence term. We affirm.

The facts elicited at trial include the following. On February 20, 1989, Dewanda Gokey and her husband, Richard Gokey, drove to the defendant's residence. All three individuals then drove in search of Dianna Shonk's home in Peterborough, where the defendant said they could find money. Upon locating the residence, the defendant and Mr. Gokey entered the house while Mrs. Gokey waited in the car. About fifteen to twenty minutes later, the defendant and Mr. Gokey returned to the car carrying a "stereo-type box," old coins, and marijuana. Dianna Shonk arrived home that evening to find a side door open, her house a mess, and her tape player and a bag of coins missing. At trial, she identified as her property a stereo player and a bag of coins which Mrs. Gokey had turned over to the police.

On February 28, 1989, Mrs. Gokey again drove her husband to the defendant's residence. The defendant told them he was "ready to do another job" and suggested that they burglarize Dianna Shonk again. On the way to Shonk's residence, the Gokeys' car developed problems. They decided to drive to Keene to the house of a friend of

the defendant, where they could borrow the friend's truck and follow the Gokeys' car home.

On the way to Keene, the defendant pointed out a house just off Route 101 in Dublin and said that the occupant owed him money and that he wanted to get even with him. The defendant stated, however, that he would need to cover his face if he took any action against the person because he would be recognized otherwise. The defendant played with a .357 magnum revolver as they drove.

When they arrived in Keene, the defendant borrowed his friend's truck. The defendant and Mr. Gokey got into the truck and began to follow Mrs. Gokey in her car. Soon thereafter, in the car's rear view mirror, Mrs. Gokey observed the truck drive off in the opposite direction. Mrs. Gokey subsequently discovered that the handgun had been removed from the car.

That same evening, Charles Pillsbury was working late in his home in Dublin with his secretary, when two men entered his apartment. One of the men, later identified at trial as Mr. Gokey, was carrying a gun and the other was wearing a paper bag over his head with slits for his eyes and mouth. The man with the gun demanded money and, when Pillsbury said he did not have any, struck him on the head with the gun. The two men left after taking Pillsbury's wallet and the secretary's pocketbook.

At trial, both Pillsbury and his secretary identified the gunman from a photograph of Mr. Gokey. Pillsbury testified that he had once employed the defendant for about three weeks and that the defendant had been to his residence every day during that period. Pillsbury could not identify the defendant as the man who wore the bag over his face.

At approximately 11:30 p.m. that same night of February 28, 1989, Mr. Gokey telephoned his wife and told her that he and the defendant had just committed an assault and robbery and that he was on the run and would not be coming home anymore. At approximately 1:15 the next morning, the defendant called his friend in Keene to report that "Rick" had stolen the truck. In turn, the friend reported the theft to the police.

At 2:45 a.m., the truck was pulled over by the police. When the police approached the truck they found Mr. Gokey alone, bleeding from several head wounds. He had apparently committed suicide immediately after he stopped the truck. In the cab of the truck, the police found a .357 magnum revolver, a paper bag with holes cut in it, and Pillsbury's wallet.

Prior to trial, the State filed a motion to admit testimony in which it sought to introduce the testimony of Mrs. Gokey concerning the statement made to her by her husband when he telephoned her on the night of February 28. The trial court held an evidentiary hearing at which, in addition to the facts set forth above, the following evidence was elicited.

Mrs. Gokey testified concerning the events of February 28, including the telephone call from her husband. She acknowledged on cross-examination that she had not mentioned her husband's reference to the defendant's involvement when she reported his statement to the police on three occasions.

The defendant's fiancee, Regina McCarthy, testified that once, when Mr. Gokey was angry with the defendant for failing to keep an appointment, he expressed a desire for revenge against him. She also testified that Mrs. Gokey told her about the phone call from Mr. Gokey and that he had said that he had just committed a crime and was on the run, but she did not mention anything about a robbery or the defendant's involvement.

Based upon the testimony offered, the trial court found Mr. Gokey's statement was trustworthy and reliable and met the requirements for admissibility as a statement against penal interest.

■■ The first issue raised by the defendant on appeal is whether the trial court erred in admitting Mr. Gokey's statement to his wife under the statement against penal interest exception to the hearsay rule, New Hampshire Rule of Evidence 804(b)(3). As a preliminary matter, the defendant argues that the question of the against-interest nature of the statement, as opposed to its factual trustworthiness, is one of law for this court. We have clearly stated in the past, however, that whether a statement is hearsay or admissible under a hearsay exception is a question for the trial court. *See State v. Richards,* 129 N.H. 669, 674, 531 A.2d 338, 341–42 (1987); *State v. Mallar,* 127 N.H. 816, 819, 508 A.2d 1070, 1071 (1986). This includes a finding that the statement is in fact against penal interest, and we will uphold the trial court's finding unless clearly erroneous.

■■ New Hampshire Rule of Evidence 804(b)(3) provides as follows:

"(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) *Statement against interest.* A statement which . . . at the time of its making . . . so far tended to subject the declar-

ant to civil or criminal liability, . . . that a reasonable person in this position would *not* have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

N.H. R. Ev. 804(b)(3). The rule thus permits an out-of-court statement to be admitted at trial when: (1) the declarant is shown to be unavailable; and (2) the statement is against the declarant's penal interest. *Id.*; *see United States v. Alvarez*, 584 F.2d 694, 699 (5th Cir. 1978). If offered by the defendant to exculpate himself, there is an additional requirement that the statement be corroborated by circumstances clearly indicating its trustworthiness. N.H. R. Ev. 804(b)(3). The justification for this exception to the hearsay rule "'rests upon the assumption that one does not make statements that would damage [oneself] unless the statement is true.'" *United States v. Palumbo*, 639 F.2d 123, 127 (3d Cir.) (quoting *United States v. Bailey*, 581 F.2d 341, 345–46 & n.4 (3d Cir. 1978)), *cert. denied*, 454 U.S. 819 (1981).

The statement at issue in the case before us is that made by Mr. Gokey to his wife to the effect that he and the defendant had just committed a robbery and assault and that he, the declarant, would not be coming home. The unavailability of the declarant in this case is not disputed. He committed suicide on March 1, 1989.

The defendant argues that the statement was not against the declarant's penal interest because a reasonable person would not think he was subjecting himself to criminal liability by speaking confidentially to his wife. He contends that such disclosures do not tend to subject the declarant to criminal liability because of the marital confidential communications privilege. We note at the outset that New Hampshire Rule of Evidence 804 "adopts the Federal Rule 804." N.H. R. Ev. 804 (reporter's notes). We will, therefore, look to federal cases interpreting Federal Rule of Evidence 804 to assist us in construing the New Hampshire rule.

Rule 804(b)(3) clearly sets forth an objective standard for determining the against-interest nature of the statement. *See also State v. Woodman*, 125 N.H. 381, 384, 480 A.2d 169, 171 (1984). This standard was adopted for practical reasons; because the initial threshold requirement for the application of the rule is that the declarant be unavailable, there will rarely be evidence of what the de-

clarant thought. As we recognized in *Woodman,* however, the court is not precluded "from making an inquiry into the declarant's subjective state of mind." *Woodman supra.* To the extent that evidence of the declarant's subjective intent exists, therefore, we will give that due weight. *See Woodman supra.*

■ ■ The against-penal-interest aspect of Rule 804(b)(3) "does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution." *United States v. Lang,* 589 F.2d 92, 97 (2d Cir. 1978). Rather, the focus of the rule is on whether the incriminating statement "tended to subject the declarant to . . . criminal liability . . . [so] that a reasonable person in this position would not have made the statement unless the person believed it to be true." N.H. R. Ev. 804(b)(3). The statement at issue in this case was an express confession. Confessing to the commission of a crime certainly "tend[s] to subject the declarant to . . . criminal liability," *id.,* regardless of the existence of a marital privilege. *See United States v. Katsougrakis,* 715 F.2d 769, 778 (2d Cir. 1983) (statements to wife tended to subject declarant to criminal liability and such marital communications were corroborated by other evidence), *cert. denied,* 464 U.S. 1040 (1984); Proposed FED. R. EVID. 505, Advisory Committee Note, 56 F.R.D. 244, 245–46 (1972) (rejecting adoption of privilege for confidential communications because marital conduct would not be affected by privilege of which parties in all likelihood are unaware); E. CLEARY, MCCORMICK ON EVIDENCE § 86, at 201 (3d ed. 1984) ("the contingency of courtroom disclosure would almost never . . . be in the minds of the parties in considering how far they should go in their secret conversations"); Note, *Pillow Talk, Grimgribbers and Connubial Bliss: The Marital Communication Privilege,* 56 IND. L.J. 121, 136 (1980) (few couples are aware of the marital communication privilege). A reasonable declarant would recognize the disserving effect of a confession. There is no evidence in the record of the declarant's subjective state of mind mandating a contrary result.

■ Furthermore, the confidential marital communications privilege only operates to exclude testimony at trial. *See* N.H. R. Ev. 504 ("neither [spouse] shall be allowed to testify against the other as to any statement, conversation, . . . or other communication made to the other"). The privilege does not ensure that the statement will not be repeated to the police or anyone else, and nothing in the rule prevents such a disclosure. In fact, in the case before us, Mrs. Gokey repeated part of her husband's incriminating statement to the defendant's fiancée shortly after receiving the telephone call from him.

██ Because the declarant is unavailable and, therefore, not subject to cross-examination at trial, the essential requirement for admissibility of such out-of-court statements is that they be reliable. The relationship of the declarant and the witness as husband and wife enhanced the reliability of the statement which is, on its face, clearly against the declarant's penal interest. *See Chambers v. Mississippi,* 410 U.S. 284, 300 (1973) (close relationship between witness and declarant adds assurance of veracity); *United States v. Lang,* 589 F.2d at 97 (declarant's statement to individual believed to be a confederate held sufficiently reliable); *United States v. Barrett,* 539 F.2d 244, 249–52 (1st Cir. 1976) (affirming reliability of inculpatory statement made to acquaintance at card game).

██ The defendant also argues that that part of the declarant's statement which incriminated the defendant is not against the declarant's penal interest and, therefore, is inadmissible hearsay. The defendant contends that "the intrinsic assumptions regarding the trustworthiness and reliability of the statement as applied to the declarant are inapplicable when the statement is used to incriminate another person." For the following reasons we disagree and hold that New Hampshire Rule of Evidence 804(b)(3) permits the introduction into evidence of collateral statements contained within a declaration against penal interest inculpating the accused, which afford a reasonable assurance of trustworthiness.

This court has previously addressed the issue of the admissibility of a statement against the unavailable declarant's penal interest which *exculpates* the defendant. *See State v. Richards,* 129 N.H. 669, 531 A.2d 338; *State v. Winders,* 127 N.H. 471, 503 A.2d 798 (1985); *State v. Woodman,* 125 N.H. 381, 480 A.2d 169. The issue of admissibility as it relates to statements which *inculpate* the defendant and are offered into evidence by the State under the statement against penal interest exception to the hearsay rule is, however, one of first impression for this court. *Cf. State v. Marcoux,* 101 N.H. 294, 295, 140 A.2d 575, 576 (1958) (co-conspirator's declarations implicating the defendant made after the common enterprise had ended constitute inadmissible hearsay); *State v. Clapp,* 94 N.H. 62, 63–64, 46 A.2d 119, 120 (1946) (same); *State v. Larkin,* 49 N.H. 39, 44 (1869) (same). *But see State v. Mallar,* 127 N.H. 816, 819, 508 A.2d 1070, 1072 (1986) (declarant's statement that tended to both exculpate and inculpate the defendant admitted at trial under declaration against penal interest exception).

The Reporter's Notes to New Hampshire Rule of Evidence 804 indicate that the rule is consistent with New Hampshire decisions

"evidencing a trend away from bright line distinctions and toward a more flexible and 'intelligent unification of ways to get useful and reliable hearsay evidence through the hearsay barrier.'" N.H. R. Ev. 804 (reporter's notes) (quoting Maguire, *Hearsay Obscurity—Glimmers of Daylight,* 3 N.H.B.J. 145, 146 (1961)). To adopt the defendant's argument that statements implicating the defendant in criminal activity must be excluded at trial is directly contrary to the object of admitting necessary, "reliable hearsay evidence." *Id.*

■■■ When a defendant uses a declaration against penal interest to exculpate himself, the New Hampshire rule requires "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement." *See* N.H. R. Ev. 804(b)(3). The federal rule contains an identical provision, and "courts have interpreted the rule as implicitly imposing a similar requirement where the government uses the hearsay to *inculpate* [the defendant]." *United States v. Seeley,* 892 F.2d 1, 2 (1st Cir. 1989); *see, e.g., United States v. Casamento,* 887 F.2d 1141, 1170 (2d Cir. 1989), *cert. denied,* 110 S. Ct. 1138, 2175 (1990); *United States v. Boyce,* 849 F.2d 833, 836 (3d Cir. 1988); *United States v. Harrell,* 788 F.2d 1524, 1526 (11th Cir. 1986); *United States v. Riley,* 657 F.2d 1377, 1382–83 (8th Cir. 1981); *United States v. Alvarez,* 584 F.2d at 700-01.

The drafters of Federal Rule 804(b)(3) "left to the courts the task of delineating prerequisites to the admissibility of inculpatory against-interest hearsay." *United States v. Alvarez,* 584 F.2d at 700. In turn, admissibility has been held to require an evaluation of corroborating circumstances which indicate the trustworthiness of the statement, including the circumstances in which the declarant made the statement and the declarant's incentive to speak truthfully. *See United States v. Casamento supra; United States v. Boyce supra.* Of course, "'the traditional surety of reliability' of the out of court declarant is 'the statement's contravention of the declarant's interest,'" *United States v. Fields,* 871 F.2d 188, 192 (1st Cir. 1989) (quoting *United States v. Alvarez,* 584 F.2d at 701), and, as we have explained, Gokey's statement that he and the defendant had committed a burglary was plainly against Gokey's penal interest.

The content of the declarant's statement was corroborated by other evidence in the case, recounted at length above. Additionally, the circumstances surrounding the declarant's statements which collaterally inculpated Kiewert made them eminently trustworthy. The declarant made the statements shortly after he committed the crime. He made them to his wife who was with her husband and the defend-

ant shortly before they committed the burglary, knew of their plans to engage in criminal activity, and had participated with them in a similar crime a few days earlier. There is nothing in the record to indicate that he had a motive to lie to his wife. His wife was unconnected to law enforcement officials. *Compare United States v. York*, 933 F.2d 1343, 1362 (7th Cir. 1991) (speaking to acquaintance unconnected to law enforcement was alone a sufficient circumstance surrounding the making of the statement to ensure trustworthiness) *with United States v. Magana-Olvera*, 917 F.2d 401, 409 (9th Cir. 1990) (declarant's statement inculpating defendant in drug trafficking made to law enforcement officials after discovering he had sold drugs to undercover police officer held unreliable). The purpose behind the declarant's statement to his wife was to explain to her the reason he was not coming home. There is nothing in the record to indicate that the declarant's statements were self-serving or an attempt to shift blame from himself to another. *See York*, 933 F.2d at 1363 (fear of unreliability stems from possibility that statements are actually self-serving and made only to shift blame to another); *cf. United States v. Love*, 592 F.2d 1022, 1024–25 (8th Cir. 1979) (statement admitting guilt and implicating another person made while in custody may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest).

 Any suggestion that the declarant's wife had a reason to fabricate that portion of the statement implicating the defendant is an issue of her credibility. *See United States v. Casamento*, 887 F.2d at 1170; *United States v. Katsougrakis*, 715 F.2d at 777. The defendant was "free to question [her] before the jury, to test [her] recollection, [and] . . . to expose [her] demeanor." *United States v. Seeley*, 892 F.2d at 3. Examining the record, we conclude that the trial court did not err in ruling that the statement was admissible under New Hampshire Rule of Evidence 804(b)(3).

 The defendant argues, alternatively, that admission of the declarant's statement denied the defendant his right to confront and cross-examine an adverse witness, contrary to part I, article 15 of the New Hampshire Constitution and the sixth amendment to the United States Constitution. The defendant concedes in his brief that the constitutional issue was not raised before the trial court, but contends that it was nonetheless properly preserved for appellate review by his hearsay objection. We recognize that the standards for admission of declarations against interest that implicate the accused and the confrontation clause are somewhat intertwined. However,

"'[d]espite the superficial similarity between the evidentiary rule and the constitutional clause, [we] [are] not . . . eager to equate them.'" *State v. Larochelle*, 112 N.H. 392, 395, 297 A.2d 223, 225 (1972) (quoting Note, *Confrontation and the Hearsay Rule*, 75 YALE L.J. 1434, 1436 (1966)); *see also Mallar*, 127 N.H. at 819, 508 A.2d at 1072. We will not review on appeal constitutional issues not presented below. *See State v. Dellorfano*, 128 N.H. 628, 632–33, 517 A.2d 1163, 1166 (1986).

The second issue raised by the defendant on appeal is whether the trial court erred when it interpreted RSA 651:6, I(c) to require that, for the extended term of imprisonment statute to apply, the defendant have been twice actually imprisoned for a period in excess of one year. RSA 651:6, I(c) reads:

"I. If a court finds that a convicted person is 18 years of age or older, he may be sentenced according to paragraph II if the court also finds, and includes such findings in the record, that:

. . . .

(c) He has twice previously been imprisoned, in this State or in any other jurisdiction, on sentences in excess of one year. . . ."

The defendant contends that this provision requires a sentencing court to find that a defendant has twice previously been imprisoned on sentences with a minimum term of one year, not that the defendant has twice previously been imprisoned for more than one year on a sentence.

The State contends that the trial court's interpretation of the statute was correct and argues that, because it is unclear whether the minimum or the maximum term would constitute the "sentence" for purposes of applying the extended term statute, the defendant's construction of the language results in an ambiguous statute. We disagree and hold that "in excess of one year" modifies the word "sentences" and that the "sentence" which governs for purposes of applying the statute is the maximum term. "The word 'sentence' when unmodified by the words 'maximum' or 'minimum' necessarily refers only to the maximum sentence for that is the legal sentence. The minimum sentence is merely an administrative notice by the court to the parole board that the question of parole might, at its expiration, properly be considered." *Commonwealth v. Glover*, 397 Pa. 543, 547, 156 A.2d 114, 117 (1959); *accord Commonwealth v.*

*Kalck,* 239 Pa. 533, 541–42, 87 A. 61, 64 (1913); *see State v. Elbert,* 125 N.H. 1, 16, 480 A.2d 854, 863 (1984) (the specification of minimum and maximum terms is required to determine parole eligibility and duration).

We held in *State v. Gosselin,* 117 N.H. 115, 122, 370 A.2d 264, 270 (1977) that "[i]mposition of an extended term of imprisonment under RSA 651:6, I(c) is dependent on proof of previous periods of imprisonment." The State suggests that if proof of prior sentences is all that is required to impose an enhanced sentence, there would be no need to establish the prior incarcerations, in contradiction to *Gosselin.* This argument, however, overlooks the express requirement in the statute that the sentencing court find that the defendant "has twice previously been imprisoned." The findings the court must make under subparagraph (c) of the statute are two-fold: (1) two prior imprisonments, resulting from, (2) sentences in excess of one year. *See State v. Heald,* 120 N.H. 319, 324, 414 A.2d 1288, 1291 (1980) (State's evidence that defendant had been sentenced on seven occasions to incarceration for a period greater than one year met the requirements of RSA 651:6, I(c)). Interpreting the clause "in excess of one year" to apply to the period of incarceration specified in the prison sentence is consistent with the grammatical structure of the sentence. If the legislature had intended that the language "in excess of one year" modify the actual period of incarceration, that language would appear closer to the word "imprisoned" rather than immediately following the word "sentences."

Documents before the sentencing court established that in 1981 the defendant was convicted of robbery and sentenced to a term of one and one-half to five years at the State Prison. He was incarcerated under that sentence from November 3, 1981, to October 14, 1983, when he was paroled. He was incarcerated again on May 16, 1984, for violation of his parole. On August 27, 1984, the defendant was convicted of receiving stolen property and sentenced to a term of one to two years, stand committed, with six months suspended from the minimum. This sentence was to be served concurrently with that for the parole violation. The defendant was released from prison on February 9, 1986.

Although the sentencing court misconstrued the statute as requiring two prior incarcerations for periods in excess of one year, we hold that the court's error was harmless, as the record supports application of the enhanced term based on the interpretation we have adopted. The defendant was twice previously imprisoned on

sentences in excess of one year. Because the maximum term controls, we reject the defendant's argument that the second sentence of one to two years, with six months suspended from the minimum, could not be used as a basis for an enhanced sentence.

The third issue raised by the defendant is whether an uncertified prison record documenting the time periods of defendant's prior incarcerations is sufficient to support the sentencing court's finding of two prior periods of incarceration. The defendant objects to the document as hearsay and contends that he was deprived of his right to confront the author.

New Hampshire Rule of Evidence 1101(d)(3) provides that the rules of evidence do not apply in sentencing proceedings, thus permitting hearsay evidence to be admitted. The defendant argues that this was "more than a mere sentencing hearing" because the court was required to make specific factual findings before applying the extended term sentencing statute. Because the defendant does not dispute the accuracy of the information contained in the record, his contention is without merit. *See Eutsey v. State,* 383 So. 2d 219, 225–26 (Fla. 1980); *State v. Rodrigue,* 127 N.H. 496, 500, 506 A.2d 299, 303 (1985) (judge exercises wide discretion in choosing evidence on which to rely in imposing sentence). Moreover, the defendant made only a general hearsay objection at the sentencing proceeding. Such an objection did not encompass an assertion of his right of confrontation and, therefore, the issue is not preserved for appeal. *See State v. Dellorfano,* 128 N.H. at 632–33, 517 A.2d at 1166.

For the above reasons, we affirm the defendant's convictions and his sentences.

*Affirmed.*

JOHNSON, J., concurred specially; HORTON, J., concurred; BROCK, C.J., and BATCHELDER, J., dissented.

JOHNSON, J., concurring specially: While I concur with the majority opinion, I write separately to further underscore the two points which I discuss below.

First, it is clear that New Hampshire Rule of Evidence 804(b)(3), and its federal counterpart, have caused considerable debate among the courts and commentators in those situations when a statement of an unavailable declarant is used to *inculpate* a defendant. I believe that the position of the majority in this case is the better view and hence concur. I write separately, however, to stress that there must

be corroborating evidence concerning the reliability of the declarant's out-of-court statement in order to *inculpate* an accused, such as the defendant, just as the Rule requires such evidence to *exculpate* the accused.

The majority has examined the record to determine whether there are corroborating circumstances which clearly indicate the trustworthiness of Mr. Gokey's statement to his wife *inculpating* Kiewart. I believe it important to once again review those facts. The evidence is clear and convincing that (1) Mr. Gokey and the defendant were together on the night of the robbery; (2) the defendant expressed his desire to be involved in "another job"; (3) the defendant pointed out a house in Dublin and stated that the owner owed him money, and that the defendant wanted to get even with this person; (4) the defendant was concerned that, since he had worked for this individual he would be recognized, and hence would have to cover his face; (5) the defendant was playing with a .357 magnum as the defendant and the Gokeys drove to Keene; (6) the gun was removed from the Gokey car when the defendant and Mr. Gokey entered the truck; (7) on the evening of the robbery, Mr. Pillsbury and his secretary were working at his home in Dublin when *two* men, one later identified as Mr. Gokey, entered the home; (8) the other man had a paper bag over his head with holes for eyes and mouth; (9) Kiewert was identified as a former employee of Pillsbury; (10) Gokey was carrying a gun and Pillsbury was struck with a gun; and (11) when the truck that the two men were using was located, the .357 magnum, a paper bag with holes in it, and Pillsbury's wallet were found. I find that all of this evidence clearly corroborates the reliability of Mr. Gokey's statement to his wife that the defendant had jointly participated in the Pillsbury robbery.

The second reason I write separately is to briefly discuss Professor Wigmore's distinguished treatise on evidence, and to explain why he would conclude that the statement of Mrs. Gokey should be admitted to prove the defendant's involvement in this robbery. Wigmore states that

> "Since the principle is that the statement [against interest] is made under circumstances fairly indicating the declarant's sincerity and accuracy (§ 1457), it is obvious that the situation indicates the correctness of whatever he may say while under that influence. In other words, the statement may be accepted, not merely as to the specific fact against interest, but also as to *every fact contained in the same statement.*"

5 J. WIGMORE, EVIDENCE § 1465, at 339 (Chadbourn rev. 1974) (emphasis added). Wigmore goes on to say that *"[a]ll parts of the speech or entry may be admitted* which appear to have been made while the declarant was in the trustworthy condition of mind which permitted him to state what was against his interest." *Id.* at 341 (emphasis added).

I find, under the peculiar facts of this case, that Mr. Gokey's entire statement, including that portion inculpating the defendant, was sufficiently reliable to have been admitted into evidence.

BROCK, C.J., dissenting: I respectfully dissent. Whether New Hampshire Rule of Evidence 804(b)(3) permits the introduction into evidence of collateral statements contained within a declaration against penal interest which inculpate the accused but do not independently inculpate the declarant is an issue of first impression for this court. The majority, in my view, has unnecessarily fashioned a rule under broad hearsay principles without giving consideration to the constitutional implications presented by this issue. The result achieves an awkward relationship between the majority's Rule 804(b)(3) analysis and the heightened requirements of the confrontation clause. I would rest a determination of the admissibility of such statements upon a narrow rule coextensive with the confrontation clause analysis under *Idaho v. Wright,* — U.S. —, 110 S.Ct. 3139 (1990).

The majority gives curt attention to the issue, stating that the "standards for admission of declarations against interest that implicate the accused and the confrontation clause are somewhat intertwined," but qualifies the relationship as "superficial," and declines to equate the two standards, citing for support our decision in *State v. Larochelle,* 112 N.H. 392, 297 A.2d 223 (1972). Moreover, the defendant's failure to object to the introduction into evidence of Gokey's statement explicitly on the basis of the confrontation clause in addition to the hearsay objection is reason enough for the majority to ignore the constitutional standard of admissibility.

My consideration of the preliminary issues is at odds with the majority's analysis. First, while I have no quarrel with the observation that the relationship between the hearsay rules and the confrontation clause is generally superficial, it is not so in this instance. Here the State seeks to introduce into evidence at a criminal trial collateral statements inculpating an accused, and consequently the fundamental underpinnings of the confrontation clause are implicated, *i.e.,* the right of the defendant to confront his accuser and to test the

validity of the accusations with cross-examination. The majority's assessment fails to appreciate the full extent and implication of the evidence admitted below.

Second, the majority's reliance upon *State v. Larochelle,* to support its conclusion that standards for the admissibility of inculpatory hearsay statements under Rule 804(b)(3) should not be equated with constitutional standards, is misplaced for a number of reasons. Although unstated by the majority, *Larochelle* did not involve Rule 804(b)(3) statements; the statutory exception was based upon a well-established common law hearsay exception; and, we found that the "scientifically reliable evidence, gathered and recorded pursuant to a public duty and admitted under [statute]" bore sufficient indicia of reliability to be introduced into evidence. *Id.* at 397, 297 A.2d at 226. We acknowledged, however, that "evidence admitted under a State-created exception to the hearsay rule may . . . infringe constitutional rights." *Id.*

Moreover, the cases cited by *Larochelle* as recent authority disavowing any intention by courts to constitutionalize the hearsay rules may be readily distinguished from the facts and constitutional concerns presented in this case. *See Mancusi v. Stubbs,* 408 U.S. 204, 216 (1972) (prior recorded testimony admissible when defendant had opportunity to cross-examine declarant at first trial thus providing sufficient indicia of reliability); *Dutton v. Evans,* 400 U.S. 74, 87 (1970) (evidence of peripheral importance admitted through only one of many witnesses subjected to full and vigorous cross-examination under long established co-conspirator exception satisfies confrontation clause); *California v. Green,* 399 U.S. 149, 158 (1970) (confrontation clause not violated by admitting a declarant's out-of-court statements when declarant is testifying as a witness and subjected to full and effective cross-examination). The case before us, however, involves crucial and devastating evidence introduced against the defendant in circumstances where the defendant had no opportunity to cross-examine the declarant. In such circumstances, the standard for admissibility has been equated with the standards conferred under the confrontation clause. *See Pointer v. Texas,* 380 U.S. 400, 407 (1965) (introduction of transcript of principal witness' statement which had been taken without affording defendant opportunity to cross-examine witness, violated confrontation clause); *Douglas v. Alabama,* 380 U.S. 415, 419 (1965) (accomplice's confession introduced without affording defendant cross-examination violated confrontation clause). Thus, *Larochelle* does not serve as effective authority for distinguishing hearsay and confrontation clause standards.

Finally, as for preservation, the defendant's failure to object on constitutional grounds does not foreclose our use of the State and Federal Constitutions as a guide to interpretating Rule 804(b)(3) as it relates to the introduction of inculpatory statements in a criminal trial. Thus, resolution of the issue before us does not concern preservation.

We now turn to the merits of the two analyses so far presented. First, Kiewert argues for a severance rule, claiming that while Gokey's statement that he committed the burglary was manifestly against his penal interest, his statement that Kiewert did it with him was not. Thus, he claims that a severing of the two statements should be performed because only one qualifies as a statement against penal interest under Rule 804(b)(3). In the second analysis, the majority, by holding that Gokey's statement was properly admitted against Kiewert, adopts a carry-over rule which assumes that the inherent reliability of that part of the statement that *is* against the declarant's interest, combined with independent corroborating evidence, may render trustworthy the collateral part of the statement that implicates an accused. I reject Kiewert's argument as too narrow and the majority's as too broad.

Kiewert's "severance rule" has merit, but in the end it proves too rigid and its analysis conclusory. Nevertheless, several jurisdictions apply the rule and some commentators have persuasively articulated its rationale. The Eighth Circuit, for instance, explains the rule as follows:

> "Rule 804(b)(3) is based on the guaranty of trustworthiness which accompanies a statement against interest. To the extent that a statement is not against the declarant's interest, the guaranty of trustworthiness does not exist and that portion of the statement should be excluded."

*United States v. Lilley,* 581 F.2d 182, 188 (8th Cir. 1978).

One of the first commentators to write on the issue expounded:

> "The probability of trustworthiness comes from the facts asserted being disserving in character. Once those facts are left behind the probability of trustworthiness for other statements seems highly speculative and conjectural. It would seem, therefore, that the courts are not justified in admitting self-serving statements merely because they accompany disserving statements . . . ."

B. Jefferson, *Declaration Against Interest: An Exception to the Hearsay Rule,* 58 HARV. L. REV. 1, 60 (1944).

Despite this authority, I believe that severing collateral from inculpatory statements that are disserving to the declarant, because the State fails to show that the collateral statements are by themselves against the declarant's interest, essentially limits admissibility under the rule to admissions of the defendant (already provided by Rule 801(2)) or statements exculpatory to an accused. Yet, the plain language of the rule does not require severance, and instead appears to differentiate between distinct classes of statements. The last sentence of the rule explicitly establishes that statements which are exculpatory to the accused are not admissible unless corroborating circumstances assure adequate trustworthiness. This specific reference to exculpatory statements suggests that another class of statements is recognized, and if the first sentence of the rule is not intended to duplicate admissions under Rule 801(2), then admitting statements which inculpate a third party is not necessarily prohibited by the rule.

This conclusion is supported by the legislative history of the Federal Rule 804(b)(3). The House-Senate Conference Committee rejected language which would have limited admissibility to exculpatory statements. The Advisory Committee's Note indicates that the drafters intended to admit, in certain circumstances, statements which inculpate a third party:

"Ordinarily the third-party confession is thought of in terms of exculpating the accused, but this is by no means always or necessarily the case: it may include statements implicating him, and under the general theory of declarations against interest they would be admissible as related statements. Douglas v. Alabama, 380 U.S. 415 . . . (1965), and *Bruton v.* United States, 389 U.S. 818 . . . (1968), both involved confessions by co-defendants which implicated the accused. While the confession was not actually offered in evidence in *Douglas*, the procedure followed effectively put it before the jury, which the Court ruled to be error. Whether the confession might have been admissible as a declaration against penal interest was not considered or discussed. *Bruton* assumed the inadmissibility, as against the accused, of the implicating confession of his codefendant, and centered upon the question of the effectiveness of a limiting instruction.

These decisions, however, by no means require that all statements implicating another person be excluded from the

> category of declarations against interest. Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. . . . On the other hand, the same words spoken under different circumstances, *e.g.* to an acquaintance, would have no difficulty in qualifying. The rule does not purport to deal with questions of the right of confrontation."

Advisory Committee's Note to FED. R. EVID. 804(b)(3), *reprinted in* 4 J. WEINSTEIN AND M. BERGER, WEINSTEIN'S EVIDENCE 804-25-26 (1991).

Requiring a severance rule is unnecessary and also contrary to our "trend away from bright line distinctions and toward a more flexible and 'intelligent unification of ways to get useful and reliable hearsay evidence through the hearsay barrier.'" N.H. R. Ev. 804 (reporter's notes) (quoting Maguire, *Hearsay Obscurity—Glimmers of Daylight,* 3 N.H.B.J. 145, 146 (1961)). My concern is that scrutinizing independent portions of a given statement would likely result in tortured bits and phrases of language, imparting artificial meaning wholly out of context of the original statement. *Cf. State v. Mallar,* 127 N.H. 816, 819, 508 A.2d 1070, 1072 (1986) (trial court could properly refuse to admit exculpatory section of statement only and required "all or nothing," reasoning that that section could not be separated and presented to jury out of context). For these reasons, I reject Kiewert's severance argument.

The majority's carry-over analysis is no more compelling. It assumes that the inherent reliability of a statement against interest, combined with corroborating evidence, may render trustworthy the collateral part of the statement that implicates the defendant.

As I read the majority's hearsay analysis, it fails to address the distinctions necessary to establish a narrow exception for admitting inculpatory statements under Rule 804(b)(3) and fails to provide the full protections afforded by the confrontation clause. As a result, the constitutional analysis will always eclipse the majority's rule in cases where the constitutional issue is properly raised. I am unable to conceive of a practical or principled reason to create a rule which bestows a lesser standard of admissibility upon identical evidence, serving only as retribution to those litigants who object to the introduction of statements only on grounds of hearsay under Rule

804(b)(3). For these reasons, I would look to the confrontation clause for a proper standard of admissibility.

In *Ohio v. Roberts,* 448 U.S. 56, (1980), the United States Supreme Court established a two-prong test for admitting hearsay evidence in conformity with the confrontation clause. We recognize that the first prong, a showing that the declarant is unavailable, has been limited in federal cases to instances when "the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White v. Illinois,* — U.S. —, 112 S. Ct. 736 (1992). That decision is not relevant to the case before us. We do not reach an issue requiring the application of either the State or Federal Constitution. We consider and apply federal cases involving discussions of the confrontation clause only as a guide to our analysis of Rule 804(b). N.H. R. Ev. 102. The second prong of *Roberts* requires that the statement bears "sufficient indicia of reliability" before it may be introduced into evidence. Reliability may be "inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66. The standard for admitting statements falling outside a firmly rooted hearsay exception is extremely high. Such statements will be admitted only where the circumstances make clear "that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation." 5 J. WIGMORE, EVIDENCE § 1420, at 251 (J. Chadbourne rev. 1974).

The problem with the majority's rule arises from the excessive breadth of circumstances considered when determining whether the statement possesses particularized guarantees of trustworthiness. In *Idaho v. Wright,* — U.S. —, 110 S. Ct. 3139, the Supreme Court, under a confrontation clause analysis, held that evidence coming in under a hearsay exception must be trustworthy intrinsically, "not by reference to other evidence at trial." *Id.* at 3150. Under the confrontation clause, therefore, we must look to the totality of the circumstances surrounding the *making* of the statement to measure whether the declarant is "particularly worthy of belief." *Id.* at 3149. The majority of this court fails to recognize the distinction between the narrow circumstances bearing upon the making of the statement and the broad range of evidence which may corroborate what is said in the statement. The *Wright* court explicitly rejected the State's argument that a determination of trustworthiness depends upon "the totality of the circumstances, including not only the circum-

stances surrounding the making of the statement, but also other evidence at trial that corroborates the truth of the statement." *Id.* at 3148.

> "[T]he use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility."

*Id.* at 3150. The proper use of corroborating evidence, according to the *Wright* court, should be limited to measuring prejudice resulting from erroneously admitted hearsay statements. *Id.* at 3150–51. I agree.

To emphasize the narrow application and range of the confrontation clause analysis, I note the jurisdictions that devote special scrutiny to statements made in a custodial setting due to their inherent unreliability. *See United States v. Vernor,* 902 F.2d 1182, 1187 (5th Cir.) (codefendant's confession presumptively unreliable because "'desire to shift or spread blame, curry favor, avenge himself, or divert attention to another'") (quoting *Lee v. Illinois,* 476 U.S. 530, 545 (1986)), *cert. denied,* 111 S. Ct. 301 (1990); *United States v. Palumbo,* 639 F.2d 123, 127 (3rd Cir.) (recognizing "special caution" when statement made while in police custody and against codefendant), *cert. denied,* 454 U.S. 819 (1981); *United States v. Sarmiento-Perez,* 633 F.2d 1092, 1102–03 (5th Cir. 1981) (third party custodial confessions share same "special suspicion" traditionally imparted by confessions) (citing *Bruton v. United States,* 391 U.S. 123, 141 (1960)), *cert. denied,* 459 U.S. 834 (1982); *United States v. Bailey,* 581 F.2d 341, 350 (3rd Cir. 1978) (statement untrustworthy when made during negotiations with authorities for reduced charges during meeting with authorities); *People v. Watkins,* 475 N.W.2d 727, 731 (Mich. 1991) (statement inadmissible in "special context" of custodial confessions given "unique and long-recognized dangers of self-serving unreliability"); *State v. Standifur,* 310 Md. 3, 13, 526 A.2d 955, 960 (1987) (statements made to person in authority implicating codefendant are "inevitably suspect" because of declarant's heightened desire to curry favor, achieve plea bargain, shift or share blame). I would encourage the same heightened vigilance.

I now turn to the merits of the case. As a preliminary matter, I conclude that Rule 804(b)(3) does not fall within a "firmly rooted

hearsay exception." *See State v. Hutchenson*, 813 P.2d 1283, 1289 (Wash. App. 1991) (hearsay exception for statement against penal interest not "firmly rooted"). After all, the question whether inculpatory statements against penal interest should be admitted under New Hampshire's Rule 804(b)(3) is being answered for the first time today. Therefore, it is the State's burden to show "particularized guarantees of trustworthiness." The circumstances surrounding the making of Gokey's statement are:

(1) Gokey was a co-participant in the crime;
(2) Kiewert was not with Gokey;
(3) Two hours had passed since the commission of the crime;
(4) Gokey made the statement to his wife;
(5) Gokey telephoned his wife to make the statement;
(6) Gokey was "on the run";
(7) Gokey committed suicide approximately three hours later;
(8) Gokey was scheduled to be sentenced for the commission of another crime the next day.

I find only one of these circumstances, that he made the statement to his wife, possibly indicative of trustworthiness. But as the Kansas Supreme Court noted in a case remarkably similar to this one, this fact can also suggest *un*reliability. *State v. Meyers*, 229 Kan. 168, 175, 625 P.2d 1111, 1116 (1981) (declarant had reason to believe a statement to wife would not be repeated to authorities). Likewise, it is difficult to know what conclusion to draw from Gokey's suicide three hours after the phone call. As the trial court made no separate findings with regard to any of the circumstances, we do not know how the court viewed these facts. Moreover, the remaining circumstances listed above powerfully support a finding of unreliability. For example, circumstances numbered (1), (2), (6), and (8) all suggest a motive to lie and shift responsibility to someone else, and (3) and (5) negate the idea that Gokey spoke spontaneously.

In conclusion, I cannot find that the State has met its burden of showing "particularized guarantees of trustworthiness", *Idaho v. Wright*, and, therefore, I would hold that Kiewert's right to confront his accusers was violated by the admission of Gokey's statement implicating him in the February 28, 1989 burglary. Kiewert's conviction relating to this burglary should be reversed, and the case remanded for a new trial.

BATCHELDER, J., joins in the dissent.