Merrimack
No. 93-215

THE STATE OF NEW HAMPSHIRE

v.

BENJAMIN ROBIDOUX

June 27, 1995

*Jeffrey R. Howard,* attorney general (*Ann M. Rice,* assistant attorney general, on the brief and orally), for the State.

*Wiggin & Nourie, P.A.,* of Manchester (*Richard B. McNamara* on the brief and orally), for the defendant.

THAYER, J. The defendant, Benjamin Robidoux, appeals his conviction for first degree murder, RSA 630:1-a (1986 & Supp. 1994), based on a jury verdict in the Superior Court (*McGuire,* J.). The defendant argues that the trial court erred by: (1) failing to suppress his confession; (2) excluding a statement made by another individual confessing to the crime for which the defendant was charged; and (3) instructing the jury regarding the defendant's refusal to provide a handwriting exemplar. We affirm.

The defendant was an inmate at the New Hampshire State Prison at the time of the murder. The victim was his cell mate, Alan Fifield. On August 24, 1991, Alan Fifield was found dead in his cell in the Secured Housing Unit, the maximum security section at the New Hampshire State Prison. He was found by correctional officers who

were searching all cells in the area as a result of the multiple stabbing death of inmate Anthony Bardas. The defendant was immediately placed under enhanced supervision. Eventually, the defendant confessed to the murder of Fifield.

The defendant first argues that his confession to the murder of Fifield was not voluntary because it was induced by the conditions of his confinement and by suggestions that his conditions would improve in return for a confession. The facts surrounding the defendant's confinement are discussed in *State v. Decker,* 138 N.H. 432, 434-35, 641 A.2d 226, 227–28 (1994). In *Decker,* we held that the restrictive conditions imposed by the prison were not so harsh as to render a confession involuntary, and that the prisoners had been informed that there would be no deals offered in exchange for their confessions. *Id.* at 437, 641 A.2d at 229. The defendant argues that his case differs because he was denied medical attention.

The defendant argues that the confession violates his right against self-incrimination under both the State and Federal Constitutions. U.S. CONST. amend. V; N.H. CONST. pt. I, art. 15. The State Constitution protects the defendant's individual liberties in this context at least as well as the Federal Constitution; therefore, we will address the claims under the State Constitution first and look to federal court decisions only for guidance. *Decker,* 138 N.H. at 436, 641 A.2d at 228.

"The voluntariness of a confession is initially a question of fact for the trial court, whose decision will not be overturned unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *Id.* A review of the record indicates that a prison doctor had prescribed sleeping pills for the defendant, and that prescription was later rescinded. The defendant alleges that the prescription was revoked because the State was attempting to induce a confession, but the record does not support that argument. The doctor testified that he revoked the prescription primarily because he had not examined the defendant, the defendant was scheduled for an exam by the prison psychiatrist on the next day, the defendant was not suffering from a serious medical problem, and prison policy favored having the prison psychiatrist write prescriptions for psychotropic drugs, such as sleeping pills. While the doctor was informed by a prison administrator that the sleeping pills could compromise any confession by the defendant, the doctor testified that he was not instructed to withhold the medication and that the discussion with the administrator played only a minor role in his decision. Based on this record, we cannot say that the defendant was denied medical care. We hold that the trial court's

determination of the voluntariness of the defendant's confession is amply supported by the record.

The defendant also argues that the confession should be suppressed because, even if voluntary, it was obtained through a violation of his procedural due process rights. That argument was never presented to the trial court and therefore was not preserved for appeal. *See State v. Brown,* 138 N.H. 649, 652, 644 A.2d 1082, 1084 (1994). Although the defendant's motion to suppress does make a passing reference to an alleged failure to hold any due process hearings before his prolonged punitive segregation, he did not allege that the failure to hold a hearing constituted an independent violation of his State constitutional rights, nor was the alleged violation ever asserted as an independent ground for suppression of the confession. It was simply a factor in the defendant's argument that his confession was involuntary. As the question of whether a procedural due process violation occurred was never properly presented to the trial court, it will not be considered on appeal. *See State v. Giordano,* 138 N.H. 90, 93, 635 A.2d 482, 483 (1993).

The defendant argues that the trial court erred in excluding testimony regarding a fellow inmate's confession to the murder of Fifield. David Decker had confessed to the murder in an interview with Andrew Galarneau, a newspaper reporter, shortly after Decker's conviction and sentencing to life imprisonment without parole for the murder of Bardas. Because Decker asserted his fifth amendment privilege at the time of the defendant's trial, the defendant attempted to call Galarneau to introduce Decker's hearsay statement. The defendant argued that the hearsay statement was admissible as a statement against penal interest pursuant to New Hampshire Rule of Evidence 804(b)(3).

The question of "whether a statement is hearsay or admissible under a hearsay exception is a question for the trial court . . . . [W]e will uphold the trial court's finding unless clearly erroneous." *State v. Kiewert,* 135 N.H. 338, 342, 605 A.2d 1031, 1034 (1992) (citations omitted). In order to admit a statement against penal interest into evidence, the trial court must determine that "(1) the declarant is shown to be unavailable, and (2) the statement is against the declarant's penal interest." *Id.* at 343, 605 A.2d at 1034. When the statement is "offered by the defendant to exculpate himself, there is an additional requirement that the statement be corroborated by circumstances clearly indicating its trustworthiness." *Id.*

The trial court ruled (1) that the statement by Decker was not against his penal interest because it was not made until after he had received the maximum prison sentence allowed by law and could receive no further punishment even if convicted of murdering Fifield,

and (2) that there were no corroborating circumstances indicating the trustworthiness of the statement.

The defendant argues that the fact that Decker was able to invoke his fifth amendment right proves that the statement was against his penal interest. This argument is without merit. In *State v. Woodman,* 125 N.H. 381, 480 A.2d 169 (1984), we confronted a similar factual circumstance. In that case, an individual made a statement exculpating the defendant and inculpating himself. The speaker later invoked the fifth amendment and refused to testify. *Id.* at 383–84, 480 A.2d at 170. We ruled that the statement did not fall within the hearsay exception because the speaker had not considered the statement inculpatory when made, notwithstanding his later invocation of his constitutional privilege against self-incrimination. *Id.* at 384, 480 A.2d at 171.

■ While generally we will use an objective test in determining whether a statement is against an individual's penal interests, we are "not precluded from making an inquiry into the declarant's subjective state of mind. To the extent that the evidence of the declarant's subjective intent exists, therefore, we will give that due weight." *Kiewert,* 135 N.H. at 342–43, 605 A.2d at 1034 (citation and quotation omitted). In this case, Decker told the reporter that "now that he has been sentenced, he would speak the truth." That statement indicates that Decker did not believe his statements were against his penal interests. The facts and circumstances surrounding Decker's statement also support the finding of the trial court.

■ Furthermore, the record contains no evidence of corroborating circumstances indicating the trustworthiness of Decker's statement. The defendant argues that discrepancies between his confession and the testimony of the medical examiner support the credibility of Decker's statements. This argument is unpersuasive. While there may be some discrepancies between the statement of the defendant and the testimony at trial, they are not so extreme as to support the statement of Decker. Additionally, none of the other evidence adduced at trial supports a finding that Decker and not the defendant committed the murder in question. Based on these facts, we cannot say that the decision of the trial court was clearly erroneous.

The defendant also argues that the exclusion of Decker's testimony violates his rights under the State and Federal Constitutions. This constitutional argument was not presented to the trial court and therefore has not been preserved for review. *Brown,* 138 N.H. at 652, 644 A.2d at 1084.

■ The defendant's final argument is that the trial court erred by instructing the jury that the defendant had refused to provide a handwriting exemplar and that the jury could infer from that refusal that the exemplar would be unfavorable to the defendant. Specifically, the defendant argues that the statement by the court violates his rights under part I, article 15 of the New Hampshire Constitution not to be compelled to furnish evidence against himself.

We previously have stated that requiring a defendant to furnish a handwriting exemplar does not violate the defendant's rights under part I, article 15 of our State Constitution because the action is non-testimonial in nature. *State v. Arsenault,* 115 N.H. 109, 112–13, 336 A.2d 244, 246–47 (1975). If a defendant refuses to comply with the court's order, as the defendant did, such a refusal is not compelled by the State; therefore, the court may instruct the jury regarding the defendant's refusal. *Cf. State v. Cormier,* 127 N.H. 253, 258–59, 499 A.2d 986, 990–91 (1985) (permitting evidentiary use of defendant's refusal to submit to chemical testing). We find no error in the instructions given by the court.

*Affirmed.*

All concurred.