Cheshire
No. 90-105

THE STATE OF NEW HAMPSHIRE

v.

ROBERT A. LEROUX

December 31, 1990

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief), by brief for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J.   The defendant, Robert A. Leroux, was convicted after a jury trial in Superior Court (*Groff*, J.) of driving while intoxicated (subsequent offense), contrary to RSA 265:82 (Supp. 1989), and operating after revocation, contrary to RSA 263:64 (Supp. 1989). The principal issue at trial was whether the defendant had been driving the car when it was stopped by the police. On appeal, he argues that the court erred in excluding testimony explaining a videotaped reenactment of the event, which was made to support the defense's theory that the defendant had been a passenger in the car and that the actual driver had crawled over him to exit the car through the passenger's side door. For the reasons that follow, we affirm the defendant's convictions.

On the evening of December 2, 1988, Jaffrey police officers David Ellis and Jeffrey Proulx set up a monitoring station on Main Street in Jaffrey to check vehicles for broken headlights and expired inspection and registration stickers. At approximately 8:10 p.m., they observed a car approaching with a broken headlight and motioned for it to stop between their two police cruisers. The car, a 1987 Pontiac Grand Am, stopped in front of the cruisers about twenty to twenty-five feet from Officer Proulx. Both officers observed William Hebert, the owner of the car, exit the car from the passenger's side. Within three to four seconds after the car stopped, Officer Proulx approached the driver's side door to ask the driver for his license and

registration. Officer Ellis immediately followed. They found the defendant sitting between the two bucket seats, with his feet in the driver's well, fumbling for something on the passenger's seat. Officer Ellis asked him to step out of the car and to perform some field sobriety tests. When the defendant failed the tests, he was taken into custody and given an intoximeter test, from which it was determined that he had a blood alcohol content of .19 percent, nearly twice the legal limit. *See* RSA 265:82, I(b). Although Hebert had also been drinking that night, he was not arrested, because he did not appear to be intoxicated.

The defendant conceded at trial that when he and Hebert were stopped by the police, he was intoxicated and his driver's license was under revocation. He argued, however, that he was not the driver of the car. Instead, he claimed that Hebert had been driving the car and, due to a partially jammed driver's door, had been required to exit the car through the passenger's side door by climbing over the defendant, who was seated in the passenger seat. In support of this theory, the defendant introduced, and the court admitted into evidence, a videotaped reenactment of the event. The video tape showed an actor, Robert Morrill, climbing over the defendant, who was seated in the passenger seat of a different car, a 1988 Buick Skylark. The defendant also requested that he be allowed to introduce the testimony of Morrill that the car in the video tape, like Hebert's car, had bucket seats and a low console and that Morrill had been able to climb over the defendant quite easily and to exit the car in approximately two to four seconds. The trial court denied his request, finding that this testimony "would be tremendously misleading to the jury and of no probative value whatsoever." It stated that there was no comparison between Morrill's and Hebert's physical abilities:

> "Mr. Hebert's own testimony indicates that he may and probably was under the influence that night which would obviously have an effect on his ability to perform his maneuvers and we are pretending that we are going to offer evidence here that a completely sober person who may have extremely good athletic skills perform the task to try to establish to this jury that it can be done in a short time."

On appeal, the defendant contends that the court erred in excluding Morrill's testimony. The defendant maintains that this testimony was crucial to his defense, because it demonstrated the plausibility of his theory that he had merely been a passenger in the car. He argues that the court should have admitted it, because the reenact-

ment did not differ substantially from the actual event. Further, he asserts that Morrill's testimony would not have prejudiced the State. Both parties waived oral argument.

A trial court's rulings on the admissibility of evidence will be upheld on appeal unless there has been an abuse of discretion. *State v. Bruce*, 132 N.H. 465, 468, 566 A.2d 1144, 1147 (1989). "An appellant claiming trial court error in abusing discretion has the burden to demonstrate that the discretionary ruling is clearly untenable or unreasonable to the prejudice of his case." *State v. Cochran*, 132 N.H. 670, 672, 569 A.2d 756, 757 (1990). Evidence of an out-of-court experiment may be admissible if the experiment was conducted under conditions substantially similar to those existing at the time of the event in question. *See* 3 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 587, at 441 (14th ed. 1987). If the conditions under which the experiment was conducted are materially different, however, such evidence will be excluded as irrelevant and likely to mislead the jury. *Id.* at 442–43.

The videotaped reenactment in the present case was in effect an experiment which purported to show that it was possible for Hebert to exit his car in three to four seconds by climbing over the defendant. Yet, as the trial court correctly found, the conditions under which this experiment was performed were materially different from those which existed when Hebert and the defendant were stopped by the police. First, Morrill, a different individual with presumably different athletic abilities than Hebert, acted the part of Hebert. Second, there was no showing that Morrill performed the experiment while under the influence of alcohol, whereas on the night in question Hebert had been drinking and might have been less agile. Finally, the defendant failed to show the requisite similarity between the interiors of the two vehicles. The fact that a defense witness testified that the two cars "have essentially the same body" missed the critical nexus by a wide enough margin to permit the trial court to disregard it. Thus, the trial court could properly have found that Morrill's testimony explaining the videotaped reenactment was substantially more likely to mislead the jury than to be probative. *See* N.H. R. Ev. 403. Accordingly, we hold that the trial court's ruling excluding Morrill's testimony did not constitute an abuse of discretion.

We note in passing that, because a filmed reenactment of a particular event is a type of evidence which has the potential to cause great prejudice, a court should exercise caution when ruling upon

the admissibility of a filmed reenactment in a criminal case. Most jurisdictions that have admitted filmed reenactments as evidence in a criminal case have required the proponent of this evidence to lay a proper foundation showing that the video tape or film accurately portrays the event in question. *See State v. Trahan*, 543 So. 2d 984, 997 (La. App. 3d Cir.), *rev'd on other grounds*, 551 So. 2d 1301 n.3 (La. 1989); *Morgan v. State*, 518 So. 2d 186, 189 (Ala. Crim. App. 1987); *State v. Tillinghast*, 465 A.2d 191, 196 (R.I. 1983); *see also* Annotation, *Admissibility of Videotape Film in Evidence in Criminal Trial*, 60 A.L.R.3d 333, 337 (1974) (stating that "it is generally recognized that before a videotape film can be admitted as evidence a proper foundation of its authenticity and accuracy must be laid"). Additionally, the proponent must establish that the reenactment was filmed under conditions substantially similar to those existing at the time of the event. *Tillinghast supra.* We suggest that a similar approach be used to determine the admissibility of filmed reenactments under the New Hampshire Rules of Evidence.

*Affirmed.*

HORTON, J., did not sit; the others concurred.