Hillsborough-northern judicial district
No. 97-387

THE STATE OF NEW HAMPSHIRE

v.

ERIC BENNETT

July 13, 1999

*Philip T. McLaughlin*, attorney general (*John C. Kissinger*, assistant attorney general, on the brief, and *Patrick E. Donovan*, assistant attorney general, orally), for the State.

*Janice S. Peterson*, public defender, of Keene, by brief and orally, for the defendant.

BRODERICK, J. After a jury trial in Superior Court (*Abramson*, J.), the defendant, Eric Bennett, was convicted of manslaughter, RSA 630:2, I(b) (1996). On appeal, he argues that the trial court erred by excluding: (1) evidence of the circumstances surrounding his taped statement to the police; (2) excerpts from his taped statement to the police; (3) evidence of the victim's prior conduct; and (4) testimony of his expert and certain cross-examination of the State's expert. We affirm.

I

On August 3, 1996, the defendant went to a bar with some friends, including his former girlfriend, Jennifer Bohl. Around 11:15 p.m., the group proceeded to Bohl's house, where the intoxicated defendant passed out or fell asleep. While he was unconscious, Bohl and some of the others attended a party in a nearby town, where they were joined by Doug Goodman. Upon returning to Bohl's house,

Goodman woke the defendant, whom he knew, and explained that they were taking him home. The defendant eventually got into the back seat of Bohl's car. Bohl drove while Goodman sat in the front passenger seat.

At some point, the defendant grabbed Goodman around the neck with his left arm and held him against the seat. Bohl pulled the car over, and the defendant screamed for her to call the police. When a local police officer arrived approximately ten minutes later, she made three demands that the defendant release his hold on Goodman. He refused to do so until the officer drew her gun. Goodman died as a result of the defendant's choke hold. An autopsy revealed that his hyoid bone had been fractured.

Following his arrest, the defendant waived his *Miranda* rights and gave a taped statement. He was charged with second degree murder, RSA 630:1-b, I(b) (1996), and convicted by a jury of the lesser-included offense of manslaughter. This appeal followed.

## II

We first address the defendant's argument that the trial court erred by excluding evidence of the circumstances surrounding his taped statement to the police. Specifically, he argues that he should have been permitted to introduce testimony that he voluntarily waived his *Miranda* rights.

Prior to trial, the court granted the State's motion to exclude the defendant's statement as inadmissible hearsay. *See* N.H. R. EV. 802. The defendant makes no claim that the State attempted to introduce his taped statement at trial and the defendant did not testify. He sought, however, to establish through the cross-examination of an interrogating officer that he waived his *Miranda* rights and voluntarily gave the statement, arguing the evidence was "relevant to his state of mind of innocence."

We conclude that the circumstances surrounding the defendant's taped statement were not relevant. *Cf. State v. Guyette*, 139 N.H. 526, 529, 658 A.2d 1204, 1206 (1995). To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of [an] action more probable or less probable than it would be without the evidence." N.H. R. EV. 401. Absent evidence of the substance of the defendant's statement, the circumstances surrounding it were not probative of the defendant's innocence.

Even assuming that the defendant voluntarily made the statement, the trial court did not abuse its discretion in excluding

such evidence because of its potential to mislead the jury. *Cf. State v. Leroux*, 133 N.H. 781, 784, 584 A.2d 778, 780 (1990). Evidence that the defendant waived his *Miranda* rights and voluntarily spoke to the police would allow him to project a cooperative and candid image, while avoiding the substance of his statement and the rigors of cross-examination concerning it. With only a part of the puzzle before it, the jury could not have reasonably determined whether the defendant was being cooperative and honest or merely protecting his self-interest when he spoke to the police. Accordingly, we conclude that the circumstances surrounding the defendant's statement were not relevant to his asserted innocence, or if relevant, potentially misleading, and therefore properly excluded by the trial court.

We are not persuaded by the defendant's reliance on *Crane v. Kentucky*, 476 U.S. 683 (1986), to establish his claim that excluding evidence of the circumstances of his statement violated his due process rights under the Federal Constitution. *See State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986) (claim limited to Federal Constitution where State Constitution not specifically invoked on appeal). In *Crane*, the prosecution relied almost entirely on the defendant's confession to secure a conviction, and the defendant sought to introduce evidence of the circumstances surrounding it to undermine its reliability. *Crane*, 476 U.S. at 685. Here, however, the defendant's statement was never introduced so that evidence of the circumstances surrounding it were not necessary to explain its context. Therefore, the defendant's federal due process claim is without merit. *Cf. State v. Ellsworth*, 142 N.H. 710, 718-19, 709 A.2d 768, 773-74 (1998) (due process rights may trump evidentiary rules but defendant must first make threshold showing of probity to justify admission of testimony).

## III

The defendant next argues that the trial court erred by not permitting him to introduce portions of his taped statement. Specifically, he contends that two excerpts from his statement, "what did he die from" and "I remember going somewhere where I'm not supposed to be going in the middle of the night with somebody that's not supposed to be there," should have been admitted.

The State argues that the defendant did not preserve this issue for appellate review. We disagree. At a pretrial hearing on the State's motion *in limine* to exclude the defendant's taped statement

in its entirety, the defendant argued that he "might want to introduce" the referenced excerpts. The trial court responded, "My inclination is they're hearsay. But that's just to let you know where I'm going. I will take it on a question by question basis at trial . . . ." Subsequently, however, the court issued a written order declaring the excerpts proposed for admission to be hearsay. The State contends that the defendant's proffer and the court's written ruling were not sufficient to preserve the issue for appellate review because the court invited the defendant to request reconsideration at trial and he failed to do so.

Under New Hampshire Rule of Evidence 103(b)(1), a contemporaneous and specific objection at trial is required to preserve an issue for appellate review. *See State v. McMinn*, 141 N.H. 636, 642, 690 A.2d 1017, 1021 (1997). The rule recognizes that "trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." *Id.* (quotation omitted). A motion *in limine* affords an opportunity for the trial court to rule on the admissibility of evidence prior to trial and for counsel to devise trial strategy accordingly. 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 712, at 161 (1997). A definitive ruling by the trial court on a motion *in limine* sufficiently preserves for appellate review the particular issue presented to the trial court. *See State v. McLaughlin*, 135 N.H. 669, 672, 610 A.2d 809, 811 (1992) (defendant's pretrial motion *in limine* to exclude evidence adequate to preserve issue for appellate review, and contemporaneous objection at trial not required). Here, the defendant's proffer was sufficient to alert the trial court to his argument, and the court's written order demonstrates that the court considered it and ruled on it. *Cf. State v. King*, 136 N.H. 674, 677, 621 A.2d 921, 922 (1993) (issue preserved where trial court understood and addressed substance of relatively vague objection).

Whether the statements were properly excluded as hearsay is an issue for the trial court, and its ruling will not be disturbed on appeal unless it was clearly erroneous. *State v. Robidoux*, 139 N.H. 657, 660, 662 A.2d 268, 271 (1995). "Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement." *Simpkins v. Snow*, 139 N.H. 735, 737, 661 A.2d 772, 774 (1995) (quotation omitted); *see* N.H. R. EV. 801(c). "Hearsay is inadmissible unless it falls within one of the exceptions provided in the rules of evidence." *Simpkins*, 139 N.H. at 737, 661 A.2d at 774.

18

■ With respect to the first remark, "what did he die from," the defendant argued at the pretrial hearing that it is

> not hearsay because there's nothing in that statement that is asserting the truth of any certain matter. In fact, our position on that would be it would back[ ]up our accident defense because [the defendant] wasn't even aware that he had choked this man to death as is the State's position. He did not realize that he was using the amount of force that would cause an individual to die. And his statement, his question, what did he die from, would corroborate our position on that point.

As a preliminary matter, the defendant points to no applicable legal authority for his conclusory assertion on appeal that a question cannot be hearsay. CF. N.H. R. EV. 801(a)(2), 802 (nonverbal conduct intended as an assertion may be excluded as hearsay). Based on the defendant's proffer, we cannot say that the trial court's exclusion of the statement as hearsay was clearly erroneous. In the context of this case, the defendant's inquiry as to the cause of Goodman's death is equivalent to an assertion that he did not know what caused it. The defendant sought to introduce his query to prove that he was, in fact, unaware of the manner of Goodman's death. Therefore, the query was actually being offered for its truth and was properly excluded.

■ With respect to the second remark, "I remember going somewhere where I'm not supposed to be going in the middle of the night with somebody that's not supposed to be there," the defendant sought to introduce it to show a fearful state of mind. Based on his proffer, we cannot say that the trial court erred in concluding that it, too, was hearsay. It is apparent that the statement was being offered to prove that the defendant did not know what was going on while he was riding in Bohl's car in order to establish that he was fearful.

■ The defendant argues that the trial court erred by failing to consider whether an exception to the hearsay rule applied. Presumably, the defendant is referring to the "state of mind" exception to the hearsay rule, *see* N.H. R. EV. 803(3). We conclude, however, that the statement does not fall within this exception. Rule 803(3) provides that hearsay may be admitted if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of

memory or belief to prove the fact remembered or believed . . . ." The defendant's remark, made several hours after his arrest, was a "statement of memory or belief" as to what he recalled or thought at the time he was in Bohl's car. "Narratives of past facts or expressions of one's understanding of what has happened do not show present intention and are incompetent hearsay." *Simpkins*, 139 N.H. at 738, 661 A.2d at 775 (quotation and brackets omitted); *see American Employers Ins. Co. v. Wentworth*, 90 N.H. 112, 116-17, 5 A.2d 265, 268 (1939) (declarations as to past mental state of declarant are hearsay); 6 J. WIGMORE, WIGMORE ON EVIDENCE § 1714, at 90 (Chadbourn rev. 1976). Therefore, the trial court did not err by excluding it.

IV

We turn next to the defendant's argument that he should have been allowed to present evidence of the victim's behavior and activities on the day he died, prior to his contact with the defendant or Bohl. The defendant contends that he should have been permitted to present testimony that Goodman was aggressive earlier that day to justify his fear of the victim. The defendant also argues that he should have been permitted to present testimony that Goodman was "unmistakably intoxicated" to impeach Bohl's testimony that Goodman did not appear drunk and that she was "very shocked" to learn later that he was highly intoxicated.

Before trial, the State sought to exclude evidence of Goodman's prior conduct. The trial court ruled that the defendant's proffered testimony constituted inadmissible prior bad acts and was not relevant to the defendant's state of mind because there was no evidence that he was even aware of Goodman's earlier behavior. The defendant does not argue that he had any contact with Goodman earlier that day, or that he was even aware of Goodman's prior conduct. Moreover, the defendant did not claim that his actions were justified by self-defense; rather, he asserted that Goodman's death was accidental. Accordingly, the trial court did not abuse its discretion in excluding evidence of Goodman's prior aggressive conduct.

The defendant's contention that Goodman's earlier behavior was relevant to impeach Bohl's testimony that the victim was not highly intoxicated is equally without merit. We agree with the State that there was ample other evidence to demonstrate Bohl's knowledge of Goodman's intoxication, and therefore testimony of Goodman's earlier behavior, even if improperly excluded, would have been

merely cumulative. The defendant introduced evidence that Goodman's blood alcohol level was .30 at the time of his death and impeached Bohl's testimony on cross-examination by establishing that Goodman demonstrated slurred speech and a staggered gait in her presence.

The defendant also argues that he should have been permitted to cross-examine Bohl about Goodman's prior conduct to demonstrate her motive to lie. We agree with the State, however, that the defendant failed to demonstrate how the excluded evidence would have served that purpose.

The defendant additionally argues that Goodman's conduct was relevant to explain *how* he developed a blood alcohol level of .30. Our review of the record, however, reveals that the only argument preserved concerned Goodman's actual blood alcohol level, rather than the circumstances by which he achieved it.

## V

The defendant's final argument is that the trial court should not have excluded the testimony of his expert nor prohibited cross-examination of the State's expert on the use and perceived danger of choke-hold restraints.

Before trial, the State sought to exclude the proposed evidence, contending that it was irrelevant and not a proper subject of expert testimony. At a hearing on the State's motion, the defense expert testified that police officers employed two basic choke-hold methods, the "arm bar hold" and the "lateral vascular neck restraint," and that accidental deaths have resulted from both types. He also testified that the "arm bar hold" was no longer used by some police departments because it presented a risk of death and that the lateral vascular hold method should be used only in accordance with strict standards. He opined that the average citizen would not likely be aware of the dangers associated with these restraints. The trial court granted the State's motion to exclude any testimony from the defense expert, reasoning that it would not assist the jury in deciding the issue of intent, that the expert's theory of lack of public awareness was based on questionable data, and that several of his opinions were a matter of common sense. At trial, the court also precluded the defendant from cross-examining the State's expert on choke-hold restraints because such cross-examination would have related to the issue of intent.

The defendant asserts that the trial court's rulings were erroneous because the proffered evidence was probative of his mental state

and necessary to educate the jury about the dangers of choke holds and the public's limited awareness of those dangers. He also contends that the evidence was admissible to rebut the inference that the degree of force used by him evidenced an intent to kill the victim.

A trial court may permit expert testimony by a qualified witness if the witness's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *State v. Cavaliere*, 140 N.H. 108, 109, 663 A.2d 96, 98 (1995). We conclude that the trial court's decision to exclude this evidence was not an abuse of its discretion. *State v. Girmay*, 139 N.H. 292, 295, 652 A.2d 150, 152 (1994).

█ Testimony regarding law enforcement's views on the propriety of various choke-hold restraints had no bearing on the defendant's mental state. The defendant points to no evidence that he had any training as a police officer or any experience in using choke holds. Moreover, the defendant points to no evidence suggesting that he was aware of how police departments viewed the use of choke holds, how police officers were trained in the use of such holds, or that such information was available to the public. Therefore, the trial court did not abuse its discretion in concluding that law enforcement views on choke holds had no relevance to the defendant's mental state. *See* N.H. R. Ev. 401.

█ Moreover, the evidence was unnecessary to rebut an inference that the amount of force used by the defendant evidenced an intent to kill. The defendant was not charged with acting intentionally, nor does the defendant point to any evidence in the record reflecting an attempt by the State to create that inference. Rather, because the defendant was charged with acting recklessly, the State argued that given the amount of force necessary to break Goodman's hyoid bone, the defendant must have known there was a substantial risk that his conduct would result in Goodman's death. *See* RSA 626:2(c) (1996) ("A person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk . . . ."). The trial court did not abuse its discretion in allowing the State to present evidence of the degree of force used by the defendant to prove that he acted recklessly. *Cf. State v. Seymour*, 140 N.H. 736, 744, 673 A.2d 786, 793, *cert. denied*, 117 S. Ct. 146 (1996) (evidence of degree of force relevant to prove defendant acted with requisite mental state).

The defendant also argues that his expert should have been allowed to educate the jury about the dangers of choke holds and the

public's limited awareness of those dangers. Even assuming such testimony were relevant, it is not admissible unless the trial court finds that the expert is qualified to offer it and that it will aid the jury. *See State v. Caplin*, 134 N.H. 302, 306, 592 A.2d 188, 191 (1991).

■ Although the court found that the defendant's expert had impressive credentials, it ruled that his proffered testimony was based on questionable data. We agree. The record reflects that the expert's conclusions were based on observations of children at play, televised wrestling matches, and movie scenes, and that he did not rely on any surveys or authoritative sources reflecting "citizen awareness" of choke holds.

We find the defendant's remaining arguments to be either so vague or so insubstantial as to be without merit, warranting no further discussion, *see Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

THAYER, J., with whom HORTON, J., joined, concurred specially; the others concurred.

THAYER, J., concurring specially: I agree with the result reached in this case but do so for reasons other than those relied upon by the majority. Specifically, the majority should not have addressed whether the trial court correctly concluded that the defendant's taped statement was hearsay because that issue was not preserved for appellate review. For the reasons explained herein, a conditional, preliminary ruling should not be sufficient to preserve an issue on appeal when that issue was not raised at trial.

"It is a bedrock principle of our adjudicatory system that ostensible errors arising before and during trial must be properly raised and preserved in order to be reviewable on appeal." *United States v. Holmquist*, 36 F.3d 154, 163 (1st Cir. 1994). In terms of evidentiary limitations, this principle is so important that we find it partially codified in our Federal and State Rules of Evidence. *Id.; see* N.H. R. EV. 103.

The purpose of New Hampshire Rule of Evidence 103 is to provide the trial court with the opportunity to rule on issues and to correct errors before they are presented to the appellate court. *See State v. Saulnier*, 132 N.H. 412, 414, 566 A.2d 1135, 1136 (1989). Unlike Federal Rule of Evidence 103, which allows appellate review where specific grounds are not raised at trial, *see* FED. R. EVID. 103(a)(1), New Hampshire Rule of Evidence 103(b)(1) mandates a contempo-

raneous and specific objection *at trial* to preserve an issue for appellate review. *See State v. Wisowaty*, 133 N.H. 604, 607, 580 A.2d 1079, 1081 (1990). "Furthermore, unlike the Federal 'plain error rule,' New Hampshire deems any objection not raised at trial to be waived and may not be considered on appeal." *State v. Johnson*, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988) (quotation and ellipses omitted). An evidentiary ruling excluding evidence, as in the present case, is not preserved for appeal unless the record discloses a contemporaneous offer of proof at trial indicating what the testimony would have been. *Saulnier*, 132 N.H. at 413, 566 A.2d at 1135.

Motions *in limine* minimize interruptions at trial because the court will be apprised of counsels' arguments before trial and can analyze them and any new arguments in light of evidence adduced at trial. They do not, however, relieve parties from compliance with Rule 103. "[I]t is not the office or function of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence." 75 AM. JUR. 2D *Trial* § 94, at 307 (1991). Instead, rulings on motions *in limine* are interlocutory and preliminary in nature and subject to change as evidence develops at trial. *Id.* at 307-08. Therefore, the decision is not immediately appealable, and a timely and proper objection must be made at trial when the evidence is presented to preserve the issue for appeal. Because of the differences that can arise between the proffered evidence at the hearing on the motion *in limine* and that which is offered at trial, some courts refuse to grant *in limine* motions at all. *Id.* § 96, *Trial* § 96, at 309-10; *see, e.g., Robertson v. White*, 113 F.R.D. 20, 27-28 (W.D. Ark. 1986). Of the remaining courts that allow *in limine* rulings when viewed in the context of Rule 103, the preservation of an issue raised at a motion *in limine* depends upon the category under which the preliminary order falls: (1) definitive; or (2) conditional.

Those courts that allow a pretrial ruling to preserve an issue for appellate review absent a renewal at trial require that the pretrial ruling be, *inter alia*, definitive. *See, e.g., American Home Assur. v. Sunshine Supermarket*, 753 F.2d 321, 324-25 (3d Cir. 1985); *United States v. Wood*, 943 F.2d 1048, 1054-55 (9th Cir. 1991); *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993). In addition to a definitive ruling, a few courts require that the question posed in the motion *in limine* be one whose nature and relevance is clear before trial. *See, e.g., Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1118-19 (8th Cir. 1985), *cert. denied*, 475 U.S. 1046 (1986). However, most cases finding definitive rulings preserved are limited in that they involve evidence proffered under Rule of Evidence

609(a)(2), which affords the trial court no discretion in admitting the evidence, *see, e.g., Wood,* 943 F.2d at 1054-55, and therefore a preliminary ruling on its admissibility is far less likely to change at trial. Conversely, other proffered evidence in which a balancing test is required, such as that mandated by Rules 403 and 609(b), may be viewed differently at the preliminary hearing and at trial. *See United States v. Cobb,* 588 F.2d 607, 612-13 (8th Cir. 1978), *cert. denied,* 440 U.S. 947 (1979). For example, application of Rule 403 may result in the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. EV. 403.

Federal courts take the position that an objection at trial is necessary to preserve an issue unless the pretrial motion dealt with an issue that is: (1) fairly presented to the court; (2) the type of issue that can be finally decided in a pretrial hearing, such as questions of law; and (3) ruled upon *without equivocation* by the trial judge. *Mejia-Alarcon,* 995 F.2d at 986-87. In terms of the second requirement, I cannot underscore enough the fact that courts that do allow definitive *in limine* rulings to be appealed absent an objection at trial caution that "most objections will prove to be dependent on trial context and will be determined to be waived if not renewed at trial." *Id.* at 988. The third requirement addresses the "definitiveness" of the *in limine* ruling. In order for it to be satisfied, the ruling must be "explicit and definitive," and there must be no indication that the earlier ruling might be subject to reconsideration. *Id.* at 987.

The majority has taken the position that the motion *in limine* ruling was definitive, which, in my view, is contrary to the record. The following exchange transpired at the *in limine* hearing regarding the proffered evidence at issue:

> DEFENSE COUNSEL: We might want to introduce [the] statement, what did he die from. . . . And there are just a few others.
>
> For example, when he tells the police I remember going somewhere where I'm not supposed to be going in the middle of the night with somebody that's not supposed to be there. [It] [m]ay be our position that should be admissible . . . .
>
> . . . .

> COURT: My inclination is they're hearsay. But that's just . . . to let you know where I'm going. I will take it on a question by question basis at trial . . . .

In its written order on the motion *in limine,* the court ruled:

> Based on the offer of proof by defense counsel, the Court believes the portions of the defendant's taped statement he seeks to admit are hearsay . . . . Accordingly, the Motion [by the State] . . . is GRANTED.
>
> . . . .
>
> The Court will consider revision of some rulings, upon motion of either party, during trial.

This case does not fall within the "definitive" category of *in limine* rulings. At the very least, the ruling was ambiguous. Furthermore, the ruling lacked definitiveness because the court stated in its oral and written orders that they were subject to reconsideration when it stated that it would "consider revision of some rulings . . . during trial." *Cf. Doty v. Sewall,* 908 F.2d 1053, 1056 (1st Cir. 1990) (holding pretrial motion *in limine* insufficient to preserve issue for appeal where district court declined to rule on admissibility of evidence until evidence was actually offered). Because the trial judge invited the defendant to renew his objection at trial, this *in limine* ruling must be classified as conditional. *See United States v. Addo,* 989 F.2d 238, 242 (7th Cir. 1993). Furthermore, the hearsay statements are subject to a Rule 403 balancing test and are not the type that can be definitely ruled on prior to trial. *Cf. Mejia-Alarcon,* 995 F.2d at 987-88.

Even if the preliminary ruling were definitive, the better rule is that in order to preserve issues for appellate review, an objection must be made at trial. This view is predicated on the theory that a motion *in limine* presents a largely hypothetical question and that a trial court is in a better position to rule on an evidentiary issue in light of a specific trial situation. *Collins v. Wayne Corp.,* 621 F.2d 777, 784 (5th Cir. 1980). In addition, "there are concrete limits to a party's right to request appellate review of evidentiary rulings, and . . . these limits reflect two factors: (1) the legitimate needs of appellate courts in the review of alleged evidentiary errors stemming from trials; and (2) the possibility that a defendant might exploit adverse rulings by treating them essentially as legal jokers, to be pulled from his sleeve should a conviction ensue." *Holmquist,* 36 F.3d at 164 (citation omitted). Not requiring an objection at trial

would constitute an invitation to the losing party to lull the judge into thinking that a theory has been abandoned and then, after he has lost, "pull a rabbit out of his pocket in the form of the forgotten motion." *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.), *cert. denied*, 500 U.S. 927 (1991). Justice cannot be served if we allow parties to use motions *in limine* as a shield in one instance and as a sword in another.

The majority's position forces this court to engage in rank speculation about whether the trial court would have admitted the evidence had the defendant proffered it at trial. *Holmquist*, 36 F.3d at 166. Such speculation will erode the purpose of appellate review, which includes examining what the court actually did at trial based on the evidence actually admitted during trial instead of analyzing rulings made during a preliminary hearing. An appellate court should review issues in light of trial testimony and not in light of a motion *in limine*. The judge ruling on the motion *in limine* may not be the judge presiding at trial. The factual predicate upon which the court's ruling is based may no longer exist at trial or the Rule 403 weighing may be affected by evidence that is introduced. That being so, the trial judge must be afforded the opportunity to consider the evidence at the time of trial. Otherwise, a trial court may be reversed for something that was never brought to its attention within the proper context.

The majority position will also allow the defeated party at the *in limine* hearing to sandbag opposing counsel who has been lulled into thinking that the objection has been abandoned. On that basis, the prevailing party may not argue or put on evidence to support the *in limine* ruling at trial. The appellate court, therefore, reviews only the prevailing party's evidence produced at the *in limine* hearings, whereas the prevailing party may have had an arsenal of evidence to produce at trial had the need arisen. We determine whether evidentiary rulings were error based on evidence adduced at trial. Evidence in support of the rulings could be irrelevant for any other purpose, and therefore inadmissible unless the pretrial issue is brought before the trial court. Even if opposing counsel attempts to adduce additional evidence, the trial court may exclude it as irrelevant unless the trial court knows that the pretrial ruling is disputed. Most importantly, this result could lead to the overturning of jury verdicts in both criminal and civil cases on grounds not contested at trial.

A necessary result of the majority's holding is that trial courts will be reluctant to rule on motions *in limine* in an effort to ensure that all contested matters are brought before the court and the very

benefit of such motions will be lost. Alternatively, trial courts will be forced during trial, *sua sponte*, to inquire as to whether either party objects to any existing preliminary rulings. Furthermore, the party in whose favor the *in limine* motion was decided will be well advised to raise the issue at trial to ascertain if any objection exists. If so, counsel will have to ask the trial court to revisit the issue and, in so doing, be allowed to present further relevant evidence.

Therefore, while I agree with the result reached in part III, I respectfully disagree with the analysis. Accordingly, I concur in the result only.

HORTON, J., joins in the special concurrence.