Lynn, J.,
dissenting. Although I agree with the majority that the trial court erred in ruling that evidence regarding threats or violent acts directed against the defendant by Tyler Dodge on occasions prior to the day of the robbery were irrelevant to her duress defense, I do not agree that this error requires the reversal of the defendant’s conviction.
I
Our traditional standard of review applicable to trial court evidentiary rulings is that the party claiming error must demonstrate that the trial court’s “ruling was clearly untenable or unreasonable to the prejudice of his case!’ State v. Deschenes, 156 N.H. 71, 76 (2007) (emphasis added). In this case, however, the majority deviates from this long-held standard and effectively substitutes a standard that grants the defendant relief upon showing merely that the trial court’s erroneous ruling might have prejudiced her case. In my view, there is no sound justification for employing such a relaxed standard.
It is important to note at the outset that, although it was the State that requested in its motion in limine a pretrial ruling that the duress defense was unavailable to the defendant, when the court denied that request it became the defendant’s burden to demonstrate the admissibility of the evidence it sought to introduce to support the defense. See, e.g., State v. Walters, 142 N.H. 239, 242 (1997) (“The party offering evidence generally *586 bears the burden of demonstrating its admissibility.”); N.H. R. Ev. 103(b)(2) (providing that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party challenging the ruling is affected and the substance of the evidence was contemporaneously made known to the court by offer of proof).
As we recently explained in State v. Noucas, 165 N.H. 146, 158 (2013), “[i]n order to predicate error on a trial court’s ruling excluding evidence, the proponent of the evidence bears the burden of making a contemporaneous offer of proof sufficient to apprise the court of the specific nature of the excluded evidence.” Id.; see also So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 503 (2009); State v. Saulnier, 132 N.H. 412, 413-14 (1989). “The object of Rule 103(b) is to advise the trial judge of a claim of error so that it can be addressed before any damage is beyond correction in the trial court.” Noucas, 165 N.H. at 158 (quotation and brackets omitted). To satisfy this requirement, the proponent must do more than merely describe the content of proposed evidence; instead, the offer of proof must establish both the relevancy and competency of the evidence at issue. See id. at 159 (citing United States v. Adams, 271 F.3d 1236, 1241 (10th Cir. 2001), for premise that “[m]erely telling the court the content of proposed testimony is not an offer of proof. In order to qualify as an adequate offer of proof, the proponent must, first,, describe the evidence and what it tends to show, and, second, identify the grounds for admitting the evidence.” (quotation, brackets, and ellipses omitted)). The party seeking admission of the evidence also has a burden “to create a sufficient record for our review on appeal, i.e., a record that sets forth the specific basis for admissibility of the proffered evidence.” Appeal of Montplaisir, 147 N.H. 297, 303 (2001) (quotation omitted); see Bohan v. Ritzo, 141 N.H. 210, 218 (1996). “Mere conclusory assertions or speculation are not sufficient to meet that burden.” Montplaisir, 147 N.H. at 303 (quotation and ellipses omitted); see Bohan, 141 N.H. at 218.
As applied to the disputed evidence here at issue, i.e., the evidence regarding Dodge’s alleged threats and violence toward the defendant on occasions prior to the day of the robbery,[1] including the incident when he placed a knife to the defendant’s throat, the above requirements mandated that the defendant make an offer of proof showing: (1) that such conduct by Dodge was relevant; and (2) that the defendant had competent evidence to prove that such conduct occurred. I am in full agreement with the majority’s analysis as to why the trial court erred in its ruling on the first point — relevancy. What I disagree with is the majority’s conclusion that, because the trial court made an erroneous ruling on relevancy, this *587 somehow relieved the defendant of her responsibility to satisfy the second requirement of a proper offer of proof. The only explanation offered by the majority for adopting this approach is to say that, in light of the court’s ruling on relevancy, “it would have been futile” for the defendant to do so given that relevancy is one of the requisites of admissibility under the doctrine of completeness. The important point, however, is that relevancy is not the only requisite to admissibility under the doctrine of completeness — the proponent of the evidence also must show that, absent its admission, a misleading impression would be created. Ante at 584. To me, the very fact that the majority finds it necessary to reverse the defendant’s conviction based on the trial court’s failure to rule on this second prong of the completeness doctrine poignantly demonstrates the fallacy of its position.
If what the majority means by “futile” is that, given the trial court’s ruling on relevancy, the defendant had little chance of changing the outcome by pressing the second prong of the offer of proof, I do not disagree. But why should that fact excuse the defendant from making an appropriate record so that we have before us all the information we need to determine whether she was actually prejudiced by the trial court’s ruling? It is not at all uncommon for trial counsel, faced with an adverse ruling from the court, to request the opportunity to make a full offer of proof for the purpose of preserving an issue for appeal. Nor is there any indication in the record that the trial court prevented — or would have prevented — the defendant from making a full offer of proof.
The majority correctly observes that the determination of whether the prior threats evidence was admissible, notwithstanding the hearsay rule, under the verbal completeness doctrine was a decision committed to the discretion of the trial court.[2] Had the defendant articulated her position and asked the trial court to make a ruling on this issue, there is no reason *588 to believe the court would have refused to do so.[3] And if the defendant had followed this course, the trial court could have determined, within its discretion and as an alternative basis for excluding such evidence, that even if its view as to the relevancy of the evidence was erroneous, the defendant’s statements about such conduct were not admissible under the doctrine of verbal completeness because they were not necessary to correct a misleading impression resulting from the portions of her statements that the court was permitting to be admitted. The majority acknowledges that such an alternative ruling by the trial court would not have been erroneous as a matter of law. Ante at 586. Indeed, given the other extensive evidence of duress which the court permitted the defendant to elicit from the officers who interviewed her, including her statements about Dodge’s threats on the day of the robbery and about her fear of both Dodge and Jones, such a ruling by the trial court would have been entirely consistent with our case law. See State v. Mitchell, 166 N.H. 288, 294 (2014) (holding that exclusion of evidence of defendant’s offers to take polygraph examination did not create misleading impression where defendant was allowed to elicit other evidence that he adamantly denied guilt and observing that “the doctrine of completeness does not require the admission of otherwise inadmissible evidence simply to bolster a defendant’s claim of innocence”); State v. Botelho, 165 N.H. 751, 763 (2013) (exclusion of portions of police interview in which defendant expressed concern for her children did not prejudice her “because she expressed concern for her children at several other points throughout the admitted portion of the interview”); State v. Lopez, 156 N.H. 416, 423 (2007) (where defendant was permitted to introduce evidence that he cried when speaking with his family prior to and during his arrest, “trial court did not err by not permitting him to introduce more of such evidence”); compare State v. Keith, 136 N.H. 572, 575 (1992) (doctrine of completeness required admission of remainder of non-testifying witness’s statement to police where portion admitted by defendant created misleading impression that witness saw someone “run into the woods, never to return,” and that witness and police officer saw different individuals run into woods). Unlike the majority, I would not permit the defendant to benefit on appeal from her own failure to make a complete offer of proof and seek a ruling from the trial court on all necessary prerequisites to the admission of the evidence she now claims was wrongly excluded.[4]
*589 Moreover, even assuming that there is some valid reason for excusing the defendant’s failure to make a proper offer of proof as to the admissibility of the prior threats evidence, I fail to see any justification for the majority’s decision to grant the defendant a new trial as the appropriate form of relief. If, as the majority asserts, the only error that potentially prejudiced the defendant was the trial court’s failure to exercise its discretion as to whether the foregoing evidence should have been admitted under the doctrine of completeness, the appropriate remedy, at least in the first instance, should be limited to a remand to the trial court to permit it to exercise its discretion. If, on remand, the trial court determines that the disputed evidence should have been admitted, only then would a new trial be in order. On the other hand, if the court determines that the portions of the defendant’s statements to the police admitted at trial did not create a misleading impression necessitating admission of the disputed evidence, this court would remain available to the defendant to obtain review of that decision. Indeed, in Thomas, one of the eases upon which the majority relies, this is exactly the remedy the court would have imposed were it not for the fact that the court also found alternative grounds upon which the defendant was entitled to a new trial. See Thomas v. United States, 59 A.3d 1252, 1267 (D.C. 2013). Since there is no alternative basis for reversal of the conviction in this case, the majority’s rush to order a new trial is inexplicable.
Finally, even if this evidentiary ruling is adequately preserved for our review, unlike the majority, I would find that any error was harmless beyond a reasonable doubt.[5] Because the State does not argue to the contrary, I, like the majority, assume that duress was a legally available *590 defense in this case. That said, however, the record makes it abundantly clear that, from a factual perspective, this defense was supported by little more than wishful thinking by the defendant. The majority asserts that the prior threats evidence was “highly relevant to whether the defendant reasonably feared imminent death or serious bodily injury when Dodge threatened to beat her on the night of the robbery.” Ante at 587. I agree that the prior threats evidence could have some marginal incremental bearing on the degree and reasonableness of the defendant’s asserted fear.[6] But fear — even great fear — of Dodge and/or Jones by the defendant is not all that is required to establish the defense of duress. In addition to being afraid, the fear must be of suffering imminent death or serious bodily injury. As we recognized in State v. Daoud, “one principle [of the duress defense] remains constant: if there is a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense will fail.” State v. Daoud, 141 N.H. 142, 147-48 (1996) (quotation and brackets omitted). And because duress is an affirmative defense, it is the defendant, rather than the State, who bears the burden of proving by a preponderance of evidence that no such alternative existed. Id. at 147.
In this case, even putting aside the defendant’s initial lies to the police about her knowledge of, or involvement in, the robbery, and — after she supposedly “came clean” — her patently implausible explanation of her initial understanding of the reason for the trio’s trip to New Hampshire,[7] *591 the evidence plainly and overwhelmingly established that, regardless of any fear she had of Dodge and/or Jones, she did have alternatives to aiding and abetting in the commission of the robbery. See Daoud, 141 N.H. at 148 (holding that defendant’s offer to prove that she was the victim of battered woman’s syndrome and was in fear of her boyfriend was properly rejected as defense to driving while intoxicated charge where evidence demonstrated that she had lawful alternatives to driving available). The undisputed evidence at trial was that the defendant was left alone in her car, which was parked in the lot of a next-door business some 50-75 yards away from the Baymont Inn, for a period of approximately seven minutes while Dodge and Jones entered the motel to commit the robbery. Yet she made no effort to drive away, run away, hide behind the Baymont or other businesses in the area, or call the police during this interval. The defendant argued below and asserts on appeal that there is no evidence she had either her cell phone or the car keys in her possession while her confederates were inside committing the robbery. To the contrary, not only was there weighty circumstantial evidence showing that she did have possession of both the car keys and her cell phone while she waited in the car,[8] but even if that were not the case, it was the defendant who bore the burden of proof to show the absence of alternatives to commission of the crime, and thus any weakness in the evidence on these points in no way undermined the State’s compelling proof of the defendant’s purposeful participation in the crime.
II
Because I would not reverse the defendant’s conviction based upon the trial court’s exclusion of the defendant’s statements to the police regarding the prior threats evidence, I also address what arguably is an alternative argument advanced by the defendant: that the trial court committed error in refusing to allow her to adduce the prior threats evidence through her own direct testimony at trial. I conclude that this issue also is not preserved for our review.
During the hearing on the State’s motion in limine, defense counsel stated: “And I think if we do present evidence through the Defendant, she *592 would testify that [abuse by Dodge] did in fact happen in the past and she had been victim to abuse.” This statement was the defendant’s only indication that she might testify at the trial made prior to the court’s ruling on the motion in limine. She made no mention of potentially offering the prior threats evidence through her own testimony in her written objection to the State’s motion submitted the morning of trial, and she never again mentioned the possibility during the pretrial hearing. After the court’s ruling that the prior threats evidence was not admissible, the defendant’s counsel did inform the jury during his opening statement that the defendant might testify. However, no further mention of the defendant potentially testifying was made during the remainder of the trial, and, at the conclusion of the State’s case, the defendant rested without offering any evidence. At no time did the court ever specifically address the admissibility of the defendant’s direct testimony as to Dodge’s prior threats, and the defendant does not argue on appeal that she did not testify because of the court’s ruling on the motion in limine. In fact, at oral argument her counsel acknowledged that “[t]he claim here is not that the court’s ruling drove [her] from the witness stand or something like that.”[9]
Nonetheless, the defendant argues that our review of the exclusion of the prior threats evidence is not limited to its admission through the testimony of the police officers, and that we may also consider whether the excluded evidence would have been admissible through her own direct testimony. She asserts that her argument is considered preserved for our review upon a showing that (1) the trial court made a “definitive ruling” excluding the evidence, see State v. Bennett, 144 N.H. 13, 17 (1999), and (2) that the substance of the evidence was contemporaneously made known to the court by offer of proof, see N.H. R. Ev. 103(b). I disagree.
As stated previously, “[i]n order to predicate error on a trial court’s ruling excluding evidence, the proponent of the evidence bears the burden of making a contemporaneous offer of proof sufficient to apprise the court of the specific nature of the excluded evidence.” Noucas, 165 N.H. at 158. This case is readily distinguishable from Bennett. In that case, although the defendant argued only that he “might want to introduce” certain excerpts of a pretrial statement to police, prompting the State to contend that the argument was not preserved for appeal, the trial court later issued a *593 written order declaring the excerpts in question to be inadmissible hearsay. Bennett, 144 N.H. at 16-17. As a result, we held that “the defendant’s proffer was sufficient to alert the trial court to his argument, and the court’s written order demonstrate^ that the court considered it and ruled on it.” Id. at 17. In this case, the defendant’s purported offer of proof, while similar to the proffer in Bennett in its hypothetical nature, prompted no ruling by the trial court. Indeed, the trial court did not respond to — or even acknowledge — counsel’s statement that the prior threats evidence could be admitted through the defendant’s testimony.
In any event, counsel’s mere speculative assertion that testimony about the prior threats could be offered through the testimony of the defendant if she were to testify fails to establish that she was prejudiced by the court’s ruling, particularly in light of her counsel’s acknowledgment that there was no causal connection between the ruling and the defendant’s decision not to testify. Noucas, 165 N.H at 159 (defendant must establish that he was prejudiced by court’s evidentiary ruling); cf. Luce v. United States, 469 U.S. 38, 42-43 (1984) (holding that trial court ruling permitting defendant to be impeached with prior convictions was too speculative to warrant appellate review where defendant did not testify); State v. Atkins, 145 N.H. 256, 257-58 (2000) (same).
Ill
For the reasons stated above, I would affirm the defendant’s conviction. I therefore respectfully dissent.

 For ease of reference, I hereinafter refer to this evidence as the “prior threats evidence.”

 By emphasizing a single word in a statement made by the prosecutor, the majority seems to suggest that he all but conceded that “any exculpatory statements [made by the defendant during the police interviews] would come in.” Ante at 586 (emphasis added). But on the very next page of the transcript, the prosecutor stated that “the State takes exception” to the court’s ruling that even the statement made by the defendant that Dodge threatened to “beat the shit out of her” on the night of the robbery met the standard of admissibility. Since this statement was exculpatory, the best that can be said is that the record is unclear as to what the State’s position would have been about whether the prior threats evidence would have been admissible under the doctrine of completeness. I am in complete agreement with the majority that neither the trial court nor the parties discussed whether the prior threats evidence constituted hearsay or was admissible under the doctrine of completeness. But that is the very point. As the proponent of that evidence, it was the defendant’s burden to make a complete offer of proof and to seek a ruling from the trial court on these issues. The consequences of the defendant’s failure to do so should rest with her, not with the State.

 Of course, if the trial court had declined to make such a ruling, in the face of a full offer of proof by the defendant, then I would readily concede that nothing more could reasonably be expected from the defendant in order to preserve the issue for our review.

 The majority cites dicta from two cases decided by the Court of Appeals for the District of Columbia for the proposition that where “a discretionary decision is at issue and the trial court has not exercised its discretion, we may sustain the trial court’s ruling on a ground upon which *589 it did not rely only if there is only one way the trial court could have ruled as a matter of law.” Ante at 585 (citing Thomas v. United States, 59 A.3d 1252, 1266 (D.C. 2013), and Wright v. United States, 508 A.2d 915, 919-20 (D.C. 1986)). Regardless of whether this dicta is sound as an abstract principle of law, the important point is that neither case involved a situation, as exists here, wherein the proponent of evidence failed to make a properly detailed proffer as to the basis upon which the evidence was admissible. Thus, Thomas and Wright are distinguishable and do not support the result reached by the majority in this case.

 It must be noted that there is some analytical tension between the majority’s reliance on the Wright-Thomas line of eases, on the one hand, and its conclusion that the error at issue here is not harmless, on the other. If, as the majority asserts, the trial court error requiring reversal is the court’s failure to exercise its discretion as to the doctrine of completeness, then presumably, under its reasoning, there would have been no error at all if the court had exercised its discretion to exclude the evidence. That being the case, it is hard to understand how the court’s failure to exercise its discretion, which has the exact same result, ie., the disputed evidence is excluded from the trial, can be anything other than harmless error. Even assuming that the majority’s position on these issues can be reconciled, however, the Wright opinion makes it clear that a failure to exercise discretion error can constitute harmless error. See Wright, 508 A.2d at 921 (after determining that trial court’s ruling precluding defendant’s counsel from making an opening statement could not be justified as a discretionary decision *590 based upon the statement’s putative “argumentative” nature because the court had never exercised its discretion on this issue, the court nonetheless found the error harmless and affirmed the defendant’s conviction).

 The defendant was permitted to present to the jury her statements to the police that, on the night of the robbery, Dodge had threatened to “beat the shit out of her” if she did not drive him and Jones to the robbery; that if she did not drive, Dodge would take her car anyway “and that would be more of a fight”; that Dodge was getting out of control, would become angry very quickly, and that “it was his way or the f_highway”; that she participated in the robbery only because she was scared and afraid she would get hurt if she did not do so; that she also was afraid of Jones because of his gang affiliation and possible retaliation against her; and that she was crying and upset when she told the police these things. In addition, she also established that both Jones and Dodge had prior criminal records and that, shortly after the robbery, Dodge had been arrested on an unrelated criminal charge. Given this evidence, which already pprtrayed Dodge as a brutish, controlling criminal, the admission of the prior threats evidence would have been cumulative and inconsequential, particularly because it had no bearing on the issue of the availability to the defendant of alternatives to aiding and abetting the robbery.

 The defendant’s story to the police was that at about 10:00 p.m. on a Sunday evening, she and her boyfriend Dodge left for a two-hour ride to New Hampshire to visit her family — the expected arrival time therefore being somewhere around midnight. According to the defendant, on this supposed nocturnal journey to visit the family, she and Dodge were accompanied by a third person — Jones — whose real name she did not know because Dodge had told her that he did not want her to know the names of his friends so that she would be unable to give *591 such information to the police. Needless to say, the defendant called no family members to offer any corroboration whatsoever of this version of events.

 As the prosecutor aptly noted in his closing argument, the evidence plainly showed that the defendant’s role in the robbery was to function as the driver of the getaway car. That being the case, the notion that Dodge and Jones would have taken the car keys with them, thus delaying the trio’s flight from the scene while one of them returned the keys to the defendant so that she could operate the vehicle, obviously strains credulity. As to the cell phone, the police specifically asked the defendant why she did not call 911. Her response was not that she was unable to do so because she did not have possession of her cell phone; rather she said she did not call the police because she did not want to get Dodge in trouble and did not want to implicate herself.

 In her initial brief on appeal, the defendant did state that “[Hollowing these rulings [on the motion in limine], [the defendant] declined to testify.” However, this statement can be taken to mean only that the defendant declined to testify during the trial, and that this decimation literally came after (ia, “followed") the trial court’s rulings on the motion in limine. It cannot be interpreted to mean that there was a causal connection between the court’s ruling and the defendant’s decision not to testify, especially given the defendant’s admission at oral argument.